**UNITED STATES ex rel. William WALKER, Relator,**

v.

**Hon. J. Edwin LaVALLEE, Warden of Clinton Prison, Dannemora, New York, Respondent.**

**Civ. No. 9576.**

United States District Court
N. D. New York.

Dec. 26, 1963.

Alfred Berman, New York City, Louis J. Lefkowitz, Atty. Gen. State of New York, Albany, N. Y., Joseph J. Rose, Asst. Atty. Gen., of counsel, for relator.

Edward S. Silver, Dist. Atty., Kings County, Brooklyn, N. Y., William I. Siegel, Asst. Dist. Atty., of counsel, for respondent.

JAMES T. FOLEY, Chief Judge.

This petition presents—after more than ten years have passed since the date of conviction and considerable appellate review been had—the serious challenge by a state prisoner that a coerced confession was used against him during his state trial held in Brooklyn, New York, in 1953. The petitioner filed a similar ap-

plication for federal habeas corpus with me in 1961 which I denied without prejudice following the procedural reasoning of the Court of Appeals, Second Circuit, prevalent at that time. I did what I very much dislike to do:—put him back on the merry-go-round of exhaustion of state remedies, including the filing of a petition for certiorari in the United States Supreme Court. (United States ex rel. Walker v. LaVallee (N.D.N.Y.), 194 F.Supp. 351; see United States ex rel. Williams v. LaVallee, 2 Cir., 276 F.2d 645). In my decision at that time, supra, I expressed my feeling that the issue of coerced confession was substantial and close, and listed the great number of cases involving this same point that have passed through this two-judge District Court of Northern New York by the quirk of confinement and jurisdictional provisions. (United States ex rel. Kiernan v. LaVallee (N.D.N.Y.), 191 F.Supp. 455; 28 U.S.C.A. § 2241; Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898). The list of federal intrusion and reversal of New York State criminal convictions is growing larger daily. New York should view as a matter of concern the fact, whether it disagrees with the rulings of the federal appellate courts or not, that increasing set-backs in upholding New York convictions are being met too frequently in the federal habeas corpus review. (See United States ex rel. Williams v. Fay, 2 Cir., 323 F.2d 65; United States ex rel. Martin v. Murphy, 2 Cir., 319 F.2d 897).

Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, another noted case that arose in New York many years ago, changes drastically the previous viewpoint concerning the exhaustion of available state remedies before federal habeas corpus may be entertained. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, another case with considerable impact and change, handed down in March 1963, mandates federal entertainment and hearing unless the state procedures reach prescribed standards for hearings with express findings of fact, or at least with some form of writing that allows reasonable reconstruction for federal review purposes. These principles are clear for all to discern, and the handwriting, in my judgment, is large and plain and to the effect that post-conviction recanvass is necessary with hearing, fact-finding and appellate writing in the State Courts on the questions of this kind. Otherwise, it seems clear the integrity of the state appellate procedures to review its own criminal matters will be subjected continuously, and in my judgment undesirably, to the admitted supremacy of federal review. My pen is about dry as to my position in these matters which have become such a heavy burden of work upon two judges that the functioning of this Court in the processing and disposition of its work for its law abiding litigants is seriously hampered. Unfortunately, a good court may be grinding to a standstill. There are more than six thousand state prisoners confined in this District. From observation, the courts of New York are in the same condition of turmoil and clogging that, as here, imperil the orderly, fair and efficient administration of criminal justice, an attainment I am sure all judges, state and federal, seek. This is all unnecessary emebllishment, but at times it is good for the soul for the district judges—characterized by the Chief Justice in Townsend v. Sain as ones in the front line—to alert and inform the federal appellate command posts that in certain federal districts the judges are beleagured to a point close to dismay by reason of the onrush of federal habeas corpus petitions from state prisoners stimulated by the new concepts. Every state prisoner believes. he is wrongfully imprisoned, and it is obvious now there will be very few who voluntarily decide that a federal question of merit is not present in their state conviction or convictions. (See Fay v. Noia,. supra, dissent of Justice Clark, and Townsend v. Sain, supra, dissent of Justice Stewart.)

This petitioner, as I suggested in my memorandum decision, went back to Judge Leibowitz in Kings County on

coram nobis application, which was denied on August 23, 1961 without a hearing. This denial was affirmed by the Appellate Division, Second Department, with a short memorandum to the effect that the identical issue of coerced confession was previously adjudicated adversely on direct appeal, and that the same issue cannot be relitigated. (16 A. D.2d 706, 227 N.Y.S.2d 749.) This ruling in itself evidences the unseemly tug-of-war now growing in intensity between the federal and state courts. The reluctance of New York trial and appellate courts to review old situations is apparently unchanged. Leave to appeal to the Court of Appeals, New York, was denied May 22, 1962. Certiorari was denied by the United States Supreme Court on October 15, 1962. 371 U.S. 869, 83 S.Ct. 133, 9 L.Ed.2d 106. It is interesting to note that the record of this state trial in New York is as complete in this instance as in every previous application I have had on the coerced confession issue and again needs nothing added to it by federal hearing. This record in October, 1962, was before the highest court of the land in the same form and content as now. It is sufficient for serious decision that will now, by my single conclusion, overrule directly the second highest appellate court of New York and indirectly the distinguished highest court of that State.

It is also noticeable to me that in many of these serious state criminal matters that I have decided and thereafter observed the steps to final conclusion there is a built-in system of delay that indicts in itself our procedures for review of state criminal convictions. Delay of ten to thirty years should demonstrate there is something wrong somewhere that should be corrected, if possible, by renewed state and federal executive, legislative and judicial study. Grave transgression of constitutional rights should always remain open for review, but the abuse of process for unmeritorious and shallow claims that destroy efficiency in the search for the worthy claim surely can be curbed by intelligent limitation.

The Report of the Committee on Habeas Corpus to the Judicial Conference of the United States in September, 1963, shows an awareness that some legislative restriction in federal habeas corpus is essential to prevent the extravagant waste of judicial time and energy now involved in our endless and duplicitous review. This report refers to "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners" by Professor Bator, in the Harvard Law Review, Vol. 76, No. 3 (1963). It is, in my judgment, an exposition of importance particularly pointing to the cold, hard fact of life that we must accept the truism that "human institutions are short of infallible". I agree with his suggestion that we seek in the competing and delicate balances involved in the administration of criminal justice "a general procedural system which does not cater to a perpetual and unreasoned anxiety that there is a possibility that error has been made in every criminal case in the legal system". (pg. 453). Of course, these are not problems of easy solution, but at times I think we should give heed to the cautions from the law enforcement side. For example, J. Edgar Hoover, in accepting the Brotherhood Award from the Washington Hebrew Congregation on December 4, 1963, said that "Justice is needed, stern justice. Justice is not served when the innocent victim and society suffer while the vicious criminal goes free." Mr. Hoover's counsel should be weighed in the same deliberate sense that judges consider the advice of sociologists, criminologists and psychiatrists in reaching decision because his long experience and valued contribution to law and order in this country was given tribute by our late President, John F. Kennedy, who described him in an address December 31, 1962, to the FBI National Academy as "one of the most distinguished public servants who have occupied positions of high responsibility in the long history of the republic."

Recent statistics prove that this great country is being overrun with violent crime, and the risk and high stakes played with in these delayed reviews are

pointed up by the concurring opinion of Chief Judge Lumbard in the second Samuel Tito Williams review. (323 F.2d 65, 69.) In the situation here Judge Leibowitz, on the scene more than ten years ago as trial judge, when resentencing the petitioner February 6, 1953, characterized him "as dangerous a criminal as ever came into this Court". It may be worth the price, but it should be appreciated that sense and balance must be maintained as much as humanly possible between the two systems, federal and state, because neither is infallible. The demoralization and discouragement of law enforcement officers in the performance of their duties must be reckoned with as well as the cynicism and recalcitrance created and obvious to me in the New York Court system in regard to lower federal court rulings. As I have stated so often in previous writings, the New York Court of Appeals, eminent in jurisprudence throughout the country, will go beyond the principles of fairness clearly enunciated by the Supreme Court and apply them with progressive responsibility in the supervision of its own state courts and this fact is recently proven again. (People v. Donovan, 13 N.Y.2d 148, 243 N.Y.S.2d 841, 193 N.E.2d 628.)

■ On the second time around, this petitioner is represented by able counsel in the presentation of his federal claim. An order to show cause was issued, and Assistant District Attorney Siegel has filed an answering affidavit and the three-hundred-page transcript of the trial. My analysis of the transcript made as a trial judge of the first instance in the federal system is that under the guides and principles established by the federal appellate courts, particularly current decisions, the written confession must be held as one made under coercion that voids the conviction. (Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837; Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922; Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; United States ex rel. Williams v. LaVallee, 2 Cir., 323 F.2d 65). At one time not long ago

it seemed settled that the District Judge should remain away from the disputed fact area in the independent examination and evaluation he must make of the record on the issue of voluntariness of a confession, but this principle may also be changing. (Thomas v. Arizona, 356 U.S. 390, 402–403, 78 S.Ct. 885, 2 L.Ed.2d 863; see Townsend v. Sain, supra, 372 U.S. pp. 313, 315, 83 S.Ct. pp. 757, 758, 9 L.Ed.2d 770). However, the performance of the duty by the District Judge to examine independently and determine cannot be foreclosed despite the finding of a court or verdict of a jury. (Payne v. Arkansas, 356 U.S. 560, 562, 78 S.Ct. 844, 2 L.Ed.2d 975).

■ There are many factors here which, in their combination, and even alone, may be enough by rulings in this circuit to be sufficient to warrant the determination of coercion. This petitioner was held and questioned for thirty-eight hours incommunicado by detectives before being arraigned, forced to sleep handcuffed in a chair for an entire night during this questioning, and then, upon arraignment long delayed, one detective admittedly by his own testimony called an ambulance and attendant to administer treatment in the detention pen "for slight laceration over right eye." (United States ex rel. Caminito v. Murphy, 2 Cir., 222 F.2d 698; cert. den. 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788; United States ex rel. Wade v. Jackson, 2 Cir., 256 F.2d 7, cert. den. 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158.) Food and drink are not mentioned. A most significant and unusual development in the trial was that Judge Leibowitz, after he heard the testimony of the alleged police brutality,—and there was more claimed than I have outlined,—made the specific ruling that the oral confessions should not be admitted in evidence because as a matter of law he found they were extorted from the defendant by force. (S. M. pg. 205.) However, in his charge, he finally left it with the jury to say whether or not the violence visited upon him, "such as it was, affected the petitioner to the degree where, when he made a con-

fession three and a half hours later in the presence of the District Attorney and a stenographer, the confession so made was tained with coercion as defined by the statute \* \* \* ". This element of the charge to the jury was made and apparently not excepted to by the defense, but accepted as in accord with existing law under the reasoning in People v. Leyra, 304 N.Y. 468, 108 N.E.2d 673. This reasoning was reversed and repudiated on the particular facts therein in Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948.

It is impossible for me to accept three and one-half hours as a substantial period of cleavage where violence and force have been judicially found. The three and one-half hour period was an appraisal of the judge, and the time could have been shorter, but no matter the time, it all occurred in the same place, under the same surveillance and during the same lengthy period of illegal detention. Measurements of time under these circumstances would only lead to artifices in police interrogation, inherently evil and comparable to reasonable time limits a prize fighter should be accorded between rounds. It is clear to me as stated by the Supreme Court in Leyra, supra, 347 U.S. p. 561, 74 S.Ct. p. 719, 98 L.Ed. 948, that the relation of the confessions is so close in time that one must say the facts of one control the other. (See Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654.) A man once broken in will does not really, if ever, recover from the breaking. (Malinski v. People of State of New York, 324 U.S. 401, 428–429, 65 S.Ct. 781, 89 L.Ed. 1029.) My finding is that the written confession received in evidence was obtained in an atmosphere of continual and substantial coercion. (Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513.)

The contention is made seriously by the Assistant District Attorney that there was failure to object by counsel and that the acceptance of the charge concerning the submission of the voluntariness of the written confession to the jury precludes attack now. In my reading of the minutes there was objection properly made at the time the written statement was offered. (S.M. 201). It was only after legal discussion and colloquy with the Court on the Leyra state decision that the concession was made that it was perfectly satisfactory to submit the issue to the jury as a question of fact as to whether the found violence carried over to the written confession. (S.M. 208.) In my judgment, such contention, even if objection were lacking, would not block federal review under the circumstances present of physical abuse. (Fay v. Noia, supra, 372 U.S. at p. 439, 83 S.Ct. at p. 849, 9 L.Ed.2d 837; United States ex rel. Reid v. Richmond, 2 Cir., 295 F.2d 83, 90; cert. den. 368 U.S. 948, 82 S.Ct. 390, 7 L.Ed.2d 344.) Certitude of guilt, even if supported by independent evidence that lends strength to the truth of the confession, is not to be considered in this type search. (Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 5 L.Ed.2d 760.)

The order to show cause is granted to the extent that the writ of habeas corpus requested by the petition hereby issues and is sustained, and the judgment of conviction challenged in the petition is set aside as void. If appeal from the judgment herein is taken, the petitioner may be held in custody of respondent pending decision on appeal. If appeal is not taken, relator may be held for prompt retrial of the charges pending in the indictment. A form of judgment or order in accordance herewith shall be prepared by the attorney for the petitioner and consent to form and substance thereof obtained from the District Attorney, otherwise to be settled on three days' notice. The transcript of the trial record, and additional sentencing and resentencing minutes, shall be returned to the District Attorney, Kings County.

It is so ordered.