Benjamin Jerrel BROWN, Petitioner,

v.

Robert A. HEINZE, Respondent.

Civ. No. 9161.

United States District Court
N. D. California, N. D.

Dec. 14, 1965.

Benjamin Jerrel Brown, in pro. per.

Thomas C. Lynch, Atty. Gen., Sacramento, Cal., for respondent.

HALBERT, District Judge.

Petitioner has filed with this Court a petition for a writ of habeas corpus, challenging his custody by the Warden of the California State Prison at Folsom, pursuant to a commitment issued out of the Superior Court of the State of California in and for the City and County of San Francisco. The record discloses that petitioner has exhausted his available state remedies within the meaning of Title 28 U.S.C. § 2254. Respondent was ordered to show cause why a writ of habeas corpus should not issue from this Court. The return to that order has been filed, and petitioner has filed his traverse thereto. The matter is now ready for the Court's consideration.

The operative facts in this case are not in dispute. Petitioner was arrested and charged with Grand Theft with two prior felony convictions. On June 27, 1960, petitioner, with counsel, entered a plea of not guilty to the theft charge and denied the two prior convictions. When the case came on for trial on August 10, 1960, petitioner appeared without counsel. At that time he informed the Court that his lawyer had withdrawn from the case because petitioner was unable to pay his fee. He stated, however, that he had discussed the case with the District Attorney and that he had decided to proceed without counsel on a changed plea of guilty. The following colloquy ensued:

"MR. DEAN: Do you recall yesterday Mr. Eschwig wanted to withdraw, your Honor, from the case, because he had not been——

"THE COURT: We had better have the record clear, hadn't we? If there is any question about Mr. Eschwig representing you, why, we should continue the case until he appears.

"THE DEFENDANT: Well, sir, I had to call Mr. Dean up and talked to him yesterday.

"THE COURT: You talked to Mr. Dean?

"THE DEFENDANT: Yes, sir, so I'd say that the time Mr. Eschwig was here *his attitude was somewhat reluctant to represent me because I didn't have finance,* so I thought perhaps I'd see if I could talk to Mr. Dean here and get this matter over with as soon as possible.

"THE COURT: Are you willing or do you wish to proceed here?

"THE DEFENDANT: Yes.

"THE COURT: Now, without counsel?

"THE DEFENDANT: Yes, sir.

"THE COURT: You have not formally employed Mr. Eschwig to handle this matter, is that right?

"THE DEFENDANT: That's right.

"THE COURT: And it is your wish now to proceed without any counsel, is that correct?

"THE DEFENDANT: Yes, that's right.

"THE COURT: I don't wish it to be said at some later time that you didn't receive fair treatment because you weren't given the *opportunity to employ counsel.* You know you have that opportunity and we are willing to put the case over, *if you wish to employ other counsel*; but if you wish to proceed, I will allow you to do so.

"THE DEFENDANT: Well, the proposition Mr. Dean and I had yesterday, as he told you this morning, whatever consideration the Court gives me I'm willing to accept.

"THE COURT: All right, take the defendant's plea.

"THE CLERK: Benjamin Jerrel Brown, you are charged in an Information filed by the District Attorney with the crime of grand theft. You entered a plea of not guilty, and today, by permission of the Court, you are allowed to withdraw that plea and enter a new plea. What is your plea at this time?

"THE DEFENDANT: Guilty.

"THE CLERK: Do you waive time?

"THE DEFENDANT: That's right.

"THE CLERK: Now is the time for judgment. Have you any legal cause to show why judgment should not be pronounced against you?

"THE DEFENDANT: No."

(Respondent's Return, pp. 14, 15 with emphasis added. See Title 28 U.S.C. § 2248)

The Court's judgment was that petitioner should be placed on probation for ten years. Petitioner violated the terms of his probation and on September 25, 1962, he was committed to prison for such violation. On appeal from that order, on the grounds, *inter alia,* of denial of counsel at the 1960 sentencing, the California District Court of Appeal, First Appellate District, affirmed the decision and denied petitioner's claim on the ground that he had waived counsel at the 1960 sentencing. The Court held:

> "On August 10, 1960, he expressed a desire to change his plea and the trial court carefully explained to him his right to counsel. The appellant *refused the services of the public defender* and insisted on proceeding without counsel and entered his plea of guilty and consented to immediate sentencing. By electing to represent himself, defendant waived the services of counsel (People v. Mattson, 51 Cal.2d 777, 336 P.2d 937)" [1]

(Unreported decision of July 31, 1964, docket No. 67–574, with emphasis added.)

The question thus presented is threefold, namely: (1) did the plea of guilty at the 1960 sentencing waive all possible defenses occurring prior to that plea; (2) if that question be answered in the negative, does the decision of the United States Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 extending the right to counsel to all indigent defendants in state felony prosecutions, apply in this case; and (3) if the second question be answered in the affirmative, did the petitioner waive his right to counsel?

### I

The general and well-established rule in regard to a plea of guilty was most recently stated by the Court of Appeals for the Second Circuit to be:

> "A voluntary guilty plea entered *on advice of counsel* is a waiver of all non-jurisdictional defects in any prior stage of the proceedings * * *." (United States ex rel. Glenn v. McMann, 349 F.2d 1018, 1019, with emphasis added.)

Virtually every court that has considered the effect of a plea of guilty has indicated that the presence of counsel, or an effective waiver thereof, is an essential element to a finding of waiver of substantive rights by way of a guilty plea (See, e. g., Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; Brown v. Cox, 10 Cir., 347 F.2d 936; Broadus v. Lowry, 6 Cir., 245 F.2d 304; and United States ex rel. Hazen v. Maroney, D.C., 217 F.Supp. 328). Following that line of cases, the Court of Appeals for the Ninth Circuit has recently said that it is improper to find a waiver of the constitutional right to counsel by way of a plea of guilty entered by a defendant when he is without counsel (See: Wright v. Dickson, 9 Cir., 336 F.2d 878, 883). On the undisputed facts now before this Court, it is, in view of the state of the law, impossible to find a meaningful waiver by way of a plea of guilty.

### II

When Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, was decided in 1963, a great debate was raised over its applicability to cases that preceded the Supreme Court's decision.[2] Some were of the view, as was this Court, that the protection of fundamental rights ought not depend upon the shifting sands of an hourglass. This Court has never been able to understand how a

---

1. As will be pointed out below, the statement that defendant "refused the services of the public defender" is not quite correct when viewed in the light of the record now before this Court. See also the testimony quoted supra at page 2 and following.

2. See, e.g., Freund, New Vistas in Constitutional Law, 112 U.Pa.L.Rev. 631 (1964); Currier, Time and Change in Judge-Made Law; Prospective Overruling, 51 Va.L.Rev. 201 (1965); cf. The Mirage of Retroactivity and Changing Constitutional Concepts, 66 Dick.L.Rev. 269 (1962).

man can have a *constitutional right* today which he did not have yesterday. If in fact a man was not granted the fair trial to which he is constitutionally entitled, there was, in this Court's view, but one remedy, and that was a new trial. That position seemed sound until the Supreme Court of the United States handed down the decision in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. In Linkletter, Mr. Justice Clark, speaking for seven members of the Court, held that the rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, which extended the prohibitions of the Fourth Amendment to the States, was not applicable to decisions that became final prior to the decision in Mapp. In reaching that decision, the Court drew a distinction between rules intended to preserve a fair trial and those merely intended to control police conduct. The Court further made clear what had been little doubted, namely, that Gideon v. Wainwright is to be applied retroactively (381 U.S. at 628, note 13, 85 S. Ct. 1731). Though the matter which petitioner seeks to attack occurred prior to the Gideon decision, it is now clear that petitioner falls within the ambit of the protections afforded by that case.

## III

█ Having determined that the petitioner in the case at bar was constitutionally entitled to have counsel for his defense, the question arises whether or not he effectively waived that right. The classic formulation of the waiver doctrine was made by the United States Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case,

including the background, experience, and conduct of the accused." (304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. 1461)

It is clear that the above standard is composed of two elements, namely: (1) the defendant must know *what* the right is, and (2) he must *intelligently* waive that known right. It follows that unless petitioner was aware of his right to counsel, he cannot be deemed to have waived that right. The first question to be answered, therefore, is: Did petitioner know what his legal rights were?

Johnson v. Zerbst, supra, indicates that the above question is to be answered by an inquiry into the facts and circumstances surrounding the purported waiver. The continued validity of that holding, however, is cast in doubt by such recent decisions of the United States Supreme Court as Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977, and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, both of which indicate that a more objective test is now in force. Those cases, and others decided at all levels of the federal system, show an increasing tendency for the federal courts to reject the more flexible "facts and circumstances" test in favor of formulation of precise, objective standards of criminal procedure such as those long imposed upon the federal courts (See, e. g., McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819; and Munich v. United States, 9 Cir., 337 F.2d 356).

█ Today a state trial judge courts danger when he is confronted by a defendant who wishes to plead guilty. No longer may the judge simply satisfy himself that the plea is voluntary; he must, in addition, use all of the magic words that are now required—in short, it matters little that the plea is freely given for it must appear from the record that the plea was given in proper form.[3] Moving then, to a determination of the

---

3. The rule is now the same in the federal courts (See: Heiden v. United States, 353 F.2d 53 [decided by United States Court of Appeals, Ninth Circuit, on November 2, 1965]).

case at bar, the question presented is: In view of petitioner's statement that his lawyer had withdrawn due to petitioner's inability to pay his fee, was the failure of the trial judge to inform the defendant of his right to have counsel appointed error of constitutional magnitude?

The Court of Appeals for the Ninth Circuit, apparently proceeding from the premise that the failure to advise a defendant in a criminal prosecution of his constitutional right to counsel is error in and of itself, has recently ruled that the bare statement that an indigent defendant may "retain" counsel is error (Wright v. Dickson, supra). The logic of that decision is self-evident—the statement that a defendant may *retain* (or, as in the instant case, *employ*) counsel may give rise to a reasonable inference on the part of the defendant that he is *not* entitled to have counsel appointed. Such a conclusion on the part of the defendant would necessarily preclude the knowledge of a constitutional right essential to an effective waiver under the doctrine of Johnson v. Zerbst, supra. In Wright v. Dickson, supra, the petitioner only *alleged* that the judge had stated that he might "retain" counsel. In the case at bar, it is an uncontroverted fact that the judge told petitioner *only* that he might "employ" counsel. In the light of that fact, the Court is of the view that no intelligent waiver can be said to have been established in this case. When petitioner informed the trial judge that his retained counsel no longer represented him because he (petitioner) "didn't have finance," it became incumbent upon the trial judge to unequivocally instruct petitioner of his right to

have counsel appointed. The statement that petitioner was entitled to "employ" counsel was more misleading than it was helpful (Wright v. Dickson, supra), and its use is error of constitutional magnitude which entitles the petitioner to relief at the hands of this Court.

IV

Having determined that petitioner is entitled to relief, the question of the proper remedy is presented. Were the strictly objective tests of Escobedo and Wright, supra, to be applied, this case would arguably not require a hearing. Since application of objective standards of waiver would entitle petitioner to discharge as a matter of law, this Court could remand the case to the state for retrial (See: Reck v. Pate, 376 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948; and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908).[4] Several factors, however, militate against that approach in the case at bar.

Since the proceedings in issue here occurred prior to the decision of the Supreme Court in Gideon v. Wainwright, supra, this Court is of the view that they ought to be judged by the "facts and circumstances" test set forth in Johnson v. Zerbst, supra, rather than by the more recent objective standards discussed above. In so doing, the Court in no wise retreats from its basic view on the retroactivity question (See: II, supra; and Hurst v. People, D.C., 211 F.Supp. 387, aff'd 9 Cir., 325 F.2d 891, rev'd 381 U.S. 760, 85 S.Ct. 1796, 14 L.Ed.2d 713 in view of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601). Rather it draws the necessary distinction between constitutional rights themselves and the

4. The failure of the trial judge to properly inform petitioner of his right to counsel distinguishes this case from the decision of the Court of Appeals for the Ninth Circuit in Wilson v. Harris, 351 F.2d 840, (decided by the United States Court of Appeals, Ninth Circuit, on October 19, 1965). In Harris, the Court reversed the order of the District Court granting a writ of habeas corpus without holding an evidentiary hearing, but the Court found as a matter of fact that the defendant had been informed of his right to counsel. The Court, affirming the position it had taken in Wright v. Dickson, supra, that "if as a matter of law petitioner is entitled to discharge * * * an evidentiary hearing [may] be avoided," held the question decided was factual and required an evidentiary hearing.

procedures necessary for their enforcement (See: Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Cal. L.Rev. 929). The states should not be bound retroactively by such objective standards so long as the prior standards were and remain adequate to protect the right which is to be accorded retroactively. As applied to the case at bar, that view allows the state to show that in fact petitioner waived his right to counsel. It should be noted, however, that petitioner has made out a prima facie case of deprivation of his constitutional right to counsel and therefore places a heavy burden upon the state to overcome that showing.

Having determined that further proceedings are required, discussion of the nature of those proceedings and the effect of the recent decision of the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, seems in order.

## V

At the outset, it should be noted that the Court is confronted by an unending, but not unexpected, flood of petitions for writs of habeas corpus. Each month brings an increase in the flood that sorely taxes the judicial resources. To be candid, the problems of proliferation of frivolous and unwarranted petitions for writs of habeas corpus are immense. The number of petitions for writs of habeas corpus filed in this Court alone has doubled each year for the last three years. Those federal courts, such as this Court, which have major state prisons in their districts are rapidly approaching the point where the quality of federal justice is being undermined by a deluge of petitions for writs of habeas corpus.[5]

In the calendar year 1964, the two Judges of the Northern Division of the Northern District of California filed 343 written orders in matters relating to state prisoner's petitions for writs of habeas corpus and the indications are that the figures compiled for the calendar year 1965 will show a substantial increase. It is evident to anyone who considers the statistics that those courts which are inundated by petitions for writs of habeas corpus are rapidly reaching a point, if they have not already reached it, where the quality of justice afforded in the federal courts is substantially impaired.[6] The day is rapidly approaching when the backlog of petitions for writs of habeas corpus will be so great that the time required to process a single petition will be long enough that for all intents and purposes the Great Writ will be suspended.

Compounding the problem of proliferation is the fact that the federal courts are constitutionally unable to make the sweeping changes needed to prevent annihilation of the Great Writ. The power to make those changes is vested in Congress, and it is Congress who must take the initiative in movement for reform. The District Courts, however, need not stand idly by while the flood of petitions so clogs the dockets that effective relief is completely precluded. Within the historic discretionary powers of the judiciary lies the power to tailor the procedures of habeas corpus to the immediate pressures of fair and speedy justice. As Mr. Chief Justice Warren said in Townsend v. Sain, 372 U.S. 293, at 313, 83 S.Ct. 745, at 757, 9 L.Ed.2d 770:

"The federal district judges are more intimately familiar with state crim-

5. See, e.g., Table C 3., Annual Report of the Director, Administrative Office of the United States Courts (1965). See, also, the opinion of Chief Judge Foley, United States District Judge, Northern District of New York, in United States ex rel. Walker v. LaVallee, D.C., 224 F. Supp. 661, commenting on the problems of proliferation in his court. Compare, Pope, Further Developments in the Field of Frivolous Applications. Is Proliferation Probable?, 33 F.R.D. 423.

6. See the cogent article by Judge Talbot Smith, in 51 American Bar Association Journal 1053, entitled "A Federal District Judge Looks at his Jurisdiction" and consider it in the light of Appendix A, infra.

inal justice, and with the trial of fact, than are we, and to their sound discretion must be left in very large part the administration of federal habeas corpus."

▉ Townsend v. Sain, supra, attempted to set forth with particularity the standards which should guide the exercise of the power to hold evidentiary hearings in regard to applications for writs of habeas corpus by state prisoners:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." (372 U.S. at 313, 83 S.Ct. at 757.)

The unarticulated major premise of the above statement of standards is that at some stage of the state proceedings petitioner has had a factual hearing on the matter in issue, whether that hearing was at the original trial or upon collateral attack. The question thus presented is: Is the required hearing necessarily a *federal* hearing where a habeas applicant (1) has made out a prima facie case of violation of a constitutional right, (2) has presented that case to the state courts, and (3) has been denied relief without an evidentiary hearing on the issue presented having been held at any stage of the prosecution or upon appeal or collateral attack? This Court is of the view that the answer to that question is a qualified negative.

▉ Townsend v. Sain, supra, expresses the concern of the federal judiciary over its "delicate role in the maintenance of proper federal-state relations" (372 U.S. at 318, 83 S.Ct. at 760). That role must not be damaged by untoward intrusions into state authority. Where, as is true in the case at bar, the state courts have misconstrued the applicable law and have on that basis denied a hearing on the merits of the matter, this Court is of the view that it is unnecessary, and indeed improper, for a federal court to pre-empt the basic authority of the state to find and apply the relevant facts to a proper constitutional standard. Where the factual issues have not been reached in a state proceeding solely because the state courts held a mistaken view of the applicable constitutional standard, the federal court should grant to the state a reasonable time in which appropriate action may be taken, thus affording the state an opportunity to make the primary findings of fact. It follows, however, that in the event of failure by the state to institute the proceedings necessary to correct the constitutional error, the federal court must exercise its authority to provide redress for deprivation of constitutional rights.

▉ In addition to the problem of state-federal relations there is a more pragmatic problem involved in petitions that raise factual issues that have not been subjected to the light of a hearing in the state courts. The state court records in such matters are of crucial value to the federal court, as was recognized by Mr. Chief Justice Warren in his opinion for the Court in Townsend v. Sain, supra (See: 372 U.S. at 315–317, 83 S.Ct. 745). Unlike proceedings under Title 28 U.S.C. § 2255, by which federal prisoners may ask the sentencing court for post-conviction relief, jurisdiction in habeas corpus for state prisoners is based upon the place of confinement rather than the place of sentencing. That factor is of great importance when the issue of previously untried facts is brought before the court. It can be of inordinate difficulty to all concerned to be required to

produce the necessary witnesses, evidence, etc. at a hearing held hundreds of miles from the place of arrest and trial. Since the state is, by virtue of state-wide process and other powers of coordination, in the best position to initially make factual findings in regard to petitioner's claim, the Court is of the view that basic considerations of federalism dictate that the respondent ought to be granted leave to make those initial findings. It seems quite clear that the spirit of Townsend v. Sain, supra, reaffirms the power and duty of the federal courts to make *de novo* factual findings when they are required by the exigencies of the case at hand, while at the same time acknowledging the dangerous propensities of unthinking use of that power. Townsend does not require, nor in the view of this Court permit, the federal courts to make the initial determination of disputed facts in the absence of a strong showing of necessity. Where, as in the case at bar, the factual questions which underlie assertions of fundamental rights have not been resolved in the first instance by the state, there is no authority vested in a federal court to make that determination unless it is shown that the state is unwilling to do so. In this regard, the reasoning of Mr. Justice Brennan speaking for the Court in Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, seems applicable:

> "By permitting the Mississippi courts to make an initial determination of waiver, we serve the causes of efficient administration of criminal justice, and of harmonious federal-state judicial relations. Such a disposition may make unnecessary the processing of the case through federal courts already laboring under congested dockets, or it may make unnecessary the relitigation in a federal forum of certain issues." (379 U.S. at 452–453, 85 S.Ct. at 570).

Though the Henry decision arose on direct review, its concern for the proper allocation of fact-finding functions between state and federal courts is apposite here, for it reaffirms the narrow path a federal court must follow when it exercises its constitutional power to intervene in the state's administration of criminal justice. Viewed in that light, a federal evidentiary hearing is not yet required in this case. Rather the rulings in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 and Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109, permit this Court to remand petitioner to the custody of state authorities for further proceedings. As the Court said in Jackson v. Denno, supra:

> "However, we think that the further proceedings to which Jackson is entitled should occur initially in the state courts rather than in the federal habeas corpus court. Jackson's trial did not comport with constitutional standards and he is entitled to a determination of the voluntariness of his confession in the state courts in accordance with valid state procedures; the State is also entitled to make this determination before this Court considers the case on direct review or a petition for habeas corpus is filed in a Federal District Court. * * * It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled—an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession." (378 U.S. at 393–394, 84 S.Ct. at 1789–1790).

That mandate, achieving as it does a realistic accommodation of the sometimes competing demands of federalism and constitutionalism, will be utilized by this Court.

It is, therefore, ordered that the petitioner's petition for a writ of habeas corpus be, and the same is, hereby granted;

It is further ordered that petitioner be, and he is, hereby remanded to the custody of the authorities of the State of Califor-

nia for appropriate proceedings consistent with the views expressed in this opinion;

And it is further ordered that in the event of a failure to grant petitioner the above relief within thirty (30) days from the date hereof, the writ is sustained and respondent is ordered to bring petitioner before this Court for such proceedings as may be appropriate.

## APPENDIX A

Statistical Survey from the Annual Report of the Director of the Administrative Office of the United States Courts (1965):

"Habeas corpus petitions, motions to vacate sentence (under 28 U.S.C., Section 2255), and other prisoner petitions filed in the district courts increased sharply in 1965, reaching another new high. The 7,027 filings in the districts shown in the table below were more than twice the filings in the same districts two years earlier and almost triple the total of four years before. As the table also shows, state habeas corpus petitions continued as the bulk of prisoner petitions."

Table O.  Prisoner petitions filed in the United States District Courts (excluding the District of Columbia, Canal Zone, Guam and the Virgin Islands), fiscal years 1962 through 1965

| | Fiscal Year | | | | Percentage change 1965 over |
|---|---|---|---|---|---|
| | 1962 | 1963 | 1964 | 1965 | 1964 |
| TOTAL ALL PETITIONS | 2,379 | 3,241 | 5,391 | 7,027 | 30.3 |
| Petitions by Federal Prisoners: | | | | | |
| Deportation habeas corpus | 55 | 19 | 29 | 53 | 82.8 |
| Deportation, other | 153 | 59 | 52 | 77 | 48.1 |
| U. S. Parole Board reviews | 12 | 10 | 20 | 23 | 15.0 |
| Motions to vacate sentence | 408 | 450 | 833 | 1,122 | 34.7 |
| Habeas corpus | 466 | 507 | 536 | 585 | 9.1 |
| Other prisoner petitions | 38 | 50 | 103 | 159 | 54.4 |
| Petitions by State Prisoners: | | | | | |
| State habeas corpus | 1,115 | 1,903 | 3,531 | 4,664 | 32.1 |
| Other prisoner petitions | 132 | 243 | 287 | 344 | 19.9 |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Tables C 3 of the Administrative Office reports from 1962 to 1965 reveal the following figures:

Petitions for Writs of Habeas Corpus
Filed in Two Major Districts

| | Northern District of California | Northern District of New York |
|---|---|---|
| July 1, 1964 to June 30, 1965 | 530 | 210 |
| July 1, 1963 to June 30, 1964 | 262 | 246 |
| July 1, 1962 to June 30, 1963 | 111 | 159 |
| July 1, 1961 to June 30, 1962 | 82* | 73* |

* Figures for the fiscal year ending June, 1962 are classified under "Detention—prisoners" and thus may include some matters other than habeas corpus.

In addition to the above figures, Table C 3 shows the following distribution during the fiscal year 1964–1965: (1) only the Southern District of New York (275) and the Northern District of California (530) had over 250 state petitions; (2) seventy-four Districts had less than 100 petitions; (3) sixty-six Districts had less than 50 petitions.

## DISTRICT COURTS*

### PETITIONS FILED BY PRISONERS
### FISCAL YEARS 1960-1965

NUMBER OF PETITIONS

Legend:
- Petitions by State Prisoners
- Petitions by Federal Prisoners
- Motions to vacate sentence
- Habeas Corpus and others

*Excludes District of Columbia, Canal Zone, Guam and Virgin Islands.

Source: Administrative Office of the United States Courts