**UNITED STATES ex rel. Charles JOSEPH, Relator,**

v.

**Hon. J. Edwin LaVALLEE, Warden of Clinton Prison, Dannemora, New York, Respondent.**

**No. 68–CV–100.**

United States District Court
N. D. New York.

Sept. 24, 1968.

Louis J. Lefkowitz, Atty. Gen. of New York, for the State.

Isidore Dollinger, Dist. Atty., L. Jeffrey Weingard, Asst. Dist. Atty., Bronx County, for respondent.

Charles Joseph, pro se.

Memorandum-Decision and Order

JAMES T. FOLEY, Chief Judge.

This habeas corpus application was under processing by the late Judge Brennan. Upon my taking it over, an order to show cause was issued to the Attorney General and the District Attorney of Bronx County in accordance with a memorandum dated July 2, 1968, outlining the background of the situation. Therein was emphasized the importance, in my judgment, of one of the questions presented being that oral statements from a co-defendant were received in evidence after precautionary methods of redaction were attempted by the Trial Judge to safeguard against prejudice to petitioner. The new rulings on questions of this kind, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (5/21/68), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (6/11/68), indicated without doubt this particular challenge in the petition for federal habeas corpus presented a very substantial question. The Roberts v. Russell decision made the Bruton ruling retroactive and applicable to the States. Affidavits in opposition to the grant of the writ were filed by the Attorney General and District Attorney, and oral argument was heard from their side on the return day of the order. There is the usual accumulation of State briefs and records. As noted in my previous decision, Assistant Attorney General Castellani has furnished the substantial trial record and separate transcript of a Huntley hearing. If references are necessary to these the symbol "R" shall be used for the trial record, and "T" for the Huntley hearing transcript. Such records shall be delivered to Mr. Castellani at my chambers in Albany.

Together with this claim that under the circumstances of only two defendants a trial with oral statements of one implicating the other made impossible effective redaction and the motion made several times for separate trials should have been granted, there are three others in the petition that should be discussed. The co-defendant's implication of petitioner through the testimony of police officers is the prime issue, and will be decided herein. The others are: (1) that interrogation of petitioner after arrest without advice to the right or assist-

ance of counsel violated constitutional rights; (2) the testimony allowed of the victim's ·physical condition after an aggravated assault during a robbery and burglary was error; (3) the sentence was excessive.

■ In my judgment, claims (2) and (3) have no federal merit or substance, and do not warrant federal habeas corpus intervention. The coerced confession claim is only discussed and not decided herein in order to note its surrounding circumstances. The trial of petitioner and co-defendant Swine commenced on December 6, 1965. Petitioner, therefore, is entitled to the requirements of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, but not Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. (See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882). Of course, the petitioner is entitled to the long established concept that statements or confession shown by an evaluation of the totality of circumstances to be coerced would invalidate a conviction if received in evidence. However in the circumstances here, although petitioner alleged physical beating by police officers, after a Huntley hearing, Justice Korn specifically found that the admission or statement of petitioner to be introduced against him at the trial was voluntary, confined to the words: "We live here", and was made before any of the alleged brutality and beating by police officers during custodial interrogation. (T. 282, 285). The Justice emphasized that this was the only inculpatory statement to be in evidence at the trial; the remainder he determined to be exculpatory. (See 28 U.S.C.A. § 2254 (d); United States ex rel. Abair v. Wilkins, 2 Cir., 333 F.2d 742).

The threshold concern is whether or not in the interests of comity and the exercise of wise discretion the New York Courts should not be afforded further opportunity to reconsider the question presented in the light of the new Supreme Court rulings. Frankly, I have always been so inclined and have praised the highest Court of New York for demonstration of its willingness to apply the new standards of the United States Supreme Court whenever enunciated. (See United States ex rel. Kiernan v. LaVallee (NDNY), 191 F.Supp. 455, 459; United States ex rel. Walker v. LaVallee (NDNY), 224 F.Supp. 661, 664). I think such policy to refrain until the State Courts reconsider in the light of a ruling and change that was unknown to all courts, State and Federal, until handed down is a sound one and appropriate in many instances. This approach, really one of courtesy and respect for our State Court systems, in my judgment, has worked well. A good example is the case of United States ex rel. DeLucia v. McMann, 2 Cir., 373 F.2d 759, 762, stating that because of a newly federal articulated right it was thought proper to give the New York Courts another opportunity to consider the claims. The aftermath should be noted. The Court of Appeals, New York, granted reargument. (19 N.Y.2d 837). The case was remitted to the trial court to consider the issue and on October 30, 1967 the Queens County Judge vacated the challenged conviction and ordered a new trial. Comity between State and Federal courts, particularly in relation to federal habeas corpus that affects so drastically state criminal convictions, has. been described often as essential to maintain in the interests of our prized federalism. (Darr v. Burford, 339 U.S. 200, 203, 220, 231, 70 S.Ct. 587, 94 L.Ed. 761; Patterson v. State of Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082; United States ex rel. Kling v. LaVallee, 2 Cir., 306 F.2d 199, 202; United States ex rel. Boyance v. Myers, 3 Cir., 372 F.2d 111, 112). Habeas corpus is a discretionary writ. (Darr v. Burford, supra, 339 U.S. pg. 204, 70 S.Ct. 587; Brown v. Allen, 344 U.S. 443, 508, 73 S.Ct. 397, 97 L.Ed. 469). One of the recent landmark federal habeas corpus decisions reiterated that the rule of exhaustion is not one of defining power but one which relates to the *appropriate* exercise of power.

(Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 822, 9 L.Ed.2d 837).

Until recently the Court of Appeals, Second Circuit, urged the District Courts of this Circuit to be circumspect about honoring this rule of comity. The advice was—and I thought it good advice—that if there was any doubt as to the availability of relief in the State Courts the federal District Court, when proper, should withhold its habeas corpus intrusion until further State consideration was sought. (United States ex rel. Tangredi v. Wallack, 2 Cir., 343 F.2d 752; United States ex rel. Martin v. McMann, 2 Cir., 348 F.2d 896; United States ex rel. McBride v. Fay, 2 Cir., 370 F.2d 547). This good policy was restated in United States ex rel. Roberts v. LaVallee, 2 Cir., 373 F.2d 49. Then came the per curiam reversal by the Supreme Court of Roberts v. LaVallee in 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41. Since then the Court of Appeals, Second Circuit, has handed down decisions giving rigid application, I believe, to the import of the Roberts Supreme Court ruling. It seems now that deference to further State Court consideration will be unwarranted if there has been one complete review of the question in the State Courts. (See United States ex rel. Sniffen v. Follette, 2 Cir., 393 F.2d 726; United States ex rel. Levy v. McMann (United States ex rel. D'Antonio v. Follette), 2 Cir., 394 F.2d 402; United States ex rel. Jefferson v. Follette, 2 Cir., 396 F.2d 862, decided 6/6/68). I can find distinctions in the Supreme Court writing in Roberts from the situation here. I think there is a substantial State interest sufficiently apparent that should permit a discretionary ruling that would allow the New York Courts, particularly the Court of Appeals if it saw fit, to use a case of this kind as a vehicle to begin to outline some of the guidelines to be followed by the State Courts in similar situations. The Appellate Courts of New York have already, since Bruton, reversed several convictions, and there are others I assume, holding the attempted redaction method in the par-

ticular case was ineffective. (See People v. Pilon, 30 A.D.2d 365, 293 N.Y.S.2d 393, App.Div. 3rd Dept.); People v. Jackson & Bruton, 22 N.Y.2d 446, 293 N.Y.S.2d 265, 239 N.E.2d 869, Ct.App., decided July 2, 1968).

In this proceeding, however, we have another important factor in that the issue in this proceeding under discussion was presented to the Appellate Division and ruled against, (28 A.D.2d 1091, 283 N.Y.S.2d 854), but leave to appeal to the Court of Appeals was denied, and therefore the issue, on its merits, never reached the highest Court of New York. Further, the petitioner, after the Bruton ruling, filed a motion including this point to vacate the judgment of conviction. A decision of Supreme Court Justice Tierney filed February 26, 1968 denying the motion has been submitted by the petitioner in this proceeding. The United States Supreme Court ruling in Bruton was handed down on May 20, 1968. After the motion was denied in the New York trial court, the petitioner chose to go no further through the Appellate procedures of New York, and filed this federal habeas corpus petition in the United States District Court. It is with reluctance that I decide to entertain the petition and not dismiss without prejudice to renewal here after the New York Courts were first given the courtesy of reappraisal in the light of the new United States Supreme Court rulings. However, there seems to be no alternative, in view of the restrictive—as I read them— recent rulings of the Court of Appeals, Second Circuit, discussed previously herein. My interpretation of such decisions is that little, if any, discretion is left with the District Courts in habeas corpus proceedings to decide in such manner so as to permit reconsideration by the State Courts when there has been one complete presentation and review in the State Trial and Appellate Courts.

On the merits of the question which for the above reasons I feel compelled to reach, there is no doubt in my mind the petitioner must prevail under the

Bruton decision. Frankly, I believe firmly the same result would be reached by the State Courts in the discharge of their equal responsibility with the federal courts to apply new constitutional rulings of the supreme judicial authority.

An important consideration in review of the circumstances of this situation is that at the Huntley hearing held before the trial and at the actual trial itself motions were made and seriously pressed on behalf of the petitioner for a separate trial for petitioner from co-defendant Swine. (T. pg. 8; R. pgs. 3–7; See United States v. Bozza, 2 Cir., 365 F.2d 206). As pointed out in Bruton—and this has been my same experience as a Trial Judge—there has always been continuous uneasiness with considerable criticism of the difficult effort that has to be undertaken to try to keep from a jury the implication in the crime of one or more defendants on trial by receiving in evidence the statements and confessions of another defendant on trial, through a third person witness or the written confession. (See Bruton v. United States, supra, 391 U.S. pgs. 129–134, 88 S.Ct. 1620). In Bruton (fn. 10), attention is specifically called to a Law Review article stating that redaction is patently impractical where the confession is offered in evidence by means of oral testimony.

Petitioner's trial, with only him and a co-defendant being tried, with testimony by police officers of the co-defendant's oral statements graphically describing participation in the violent crime of a second person may be a classic example of a situation wherein any method of redaction would be patently impractical. I do not question the earnestness and good faith of the Trial Judge in the attempt to adopt a method of redaction that was thought would effectively avoid hearsay and prejudicial implication of the petitioner.

The direction of the Judge to the police officers who were to testify was that in testifying about conversations with co-defendant Swine, to use the word "he" or "the other person" or something else, but not the petitioner's name. (R. 198–199). Swine, of course, had implicated the petitioner Joseph by name to the police officers without equivocation as the other active participant in the crime when interrogated by the police officers. Detective Foglia, in his testimony in accordance with the Judge's direction when he testified about Swine's statements to him, when he came to that point, described the activity of his partner in the robbery and assault of an elderly woman in her apartment as "this other person" and "his friend", instead of naming petitioner Joseph. (R. 199–201.) Officer Driscoll testified that Swine, while being taken to the Police Station, said: "they had went out looking for something of value; they came to this apartment and Swine went up, climbed the fire escape and broke the window with his elbow. He went into the apartment and let *someone else* in through the door, and they were surprised by a woman who lived in the apartment. * * *" (R. 67). Patrolman Rose testified to about the same effect as to admissions of Swine in this respect, concluding without naming Joseph: "He let the other fellow in." (R. 174–177).

In the development of evidence at the trial and the setting in which it was offered, it is impossible for me to accept the contention that the jury did not know that these statements "the other fellow" or "his friend" meant the petitioner, Joseph. It would be an insult to the intelligence of our jurors to believe that this sincere attempt at camouflage deluded them into the belief that "the other person" in the particular trial setting could be a person other than Joseph. Other witnesses placed Joseph at the scene and he did himself when he testified, admitting he was there, but claiming he entered the apartment innocently. To compound, in my judgment, the impossibility of an effective redaction, during the prosecution case and after the oral statements of Swine had been testified to by the police officers, Swine

pleaded guilty. The single defendant remaining against whom the charges were submitted to the jury was Joseph, the only defendant left. Surely, it would not be too speculative to conclude that the jury must have known that Joseph was "the other fellow" and "the friend" referred to in the oral statements testified to by the police officers.

Assistant District Attorney Weingard, in able briefing and oral argument, urges along with the contention there was effective redaction by not naming Joseph in particular, that the ability of the jury to segregate must be viewed in consideration of the admonition in the charge that the jury was not to consider any statements that the officers may have testified to as made by Henry Swine; that they were not in the case whatever. (R. 477). None of us ever know what remains in the minds of the jurors when these rituals are recited by the Trial Judge, but in my judgment simple logic would lead to conclusion that in the dilemma of this trial setting, the testimony about "another person" could not be erased from the jurors' mental processes and could only mean it was Joseph. Otherwise they would have to think the prosecution was deliberately from the beginning trying the wrong man as the other second person.

It is also argued that after his plea of guilty the petitioner could have called Swine as a witness and thus preserved the constitutional right to confrontation. It is clear that the Bruton ruling (pg. 137, 88 S.Ct. 1620) is based upon the constitutional right of cross-examination, not the substitute privilege of calling a witness who was a co-defendant and may incriminate. There would also be the attendant risk of the standard evidentiary rules being applied that the witness is one's own when called, and any attack on his credibility might be sub-

stantially limited. The last contention is that the admission of the disputed testimony should be considered as harmless-error, being unimportant or insignificant on the issue of guilt in this particular trial setting, particularly so because of other strong, independent evidence against Joseph. (Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705). However, I am unable to find beyond a reasonable doubt in accord with the Chapman doctrine that the method used to accept the type evidence condemned in Bruton did not influence to some extent the jury verdict of guilty returned against Joseph.

■ Therefore, solely on the claim that inadmissible hearsay evidence inculpating petitioner was received in evidence under circumstances where effective redaction was impossible, the order to show cause is granted and the writ of habeas corpus sought by the petition is hereby issued and sustained.

The judgment of conviction challenged in the petition is set aside as void. If appeal from the judgment herein is taken, the petitioner may be held in custody of respondent pending decision on appeal. If appeal is not taken, petitioner may be held for prompt retrial on the charges of the indictment. If such action is not promptly taken, the writ is hereby sustained fully and the petitioner is to be discharged from custody.

This is a final order and judgment, but if necessary for the transfer of petitioner from the custody of respondent Warden to the lawful custodian of Bronx County for defendants awaiting trial on indictment, a form of order or judgment in accordance herewith shall be submitted by the Attorney General of New York or the District Attorney of Bronx County.

It is so ordered.