UNITED STATES of America ex rel. Anthony BRUNO, Petitioner,

v.

Ross E. HEROLD, M. D., Director of Dannemora State Hospital, Dannemora, New York, Respondents.

Civ. No. 10155.

United States District Court
N. D. New York.

Oct. 14, 1965.

F. Redmond Griffin, Troy, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York, Aaron Koota, Dist. Atty., Kings County, for respondents, Lattimer Senior, Asst. Atty. Gen., William I. Siegel, Asst. Dist. Atty., of counsel.

JAMES T. FOLEY, Chief Judge.

This habeas corpus proceeding, as few do in proportion to the steady stream

of their filing by state prisoners, involves a substantial question, in my judgment. Contrariwise in the State Courts of New York, to my evaluation of substance, and ironically, it would seem, Judge Leibowitz denied a coram nobis application raising the same question presented in the federal application on October 9, 1963, without the grant of hearing. The Appellate Division, Second Department, affirmed the denial, no opinion, on March 2, 1964, (People v. Bruno, 20 A.D.2d 852, 249 N.Y.S.2d 406), and thereafter Presiding Judge Beldock denied permission to appeal to the Court of Appeals, New York, as did Court of Appeals Judge Burke. I have already written twice: first on May 7, 1964 dismissing the petition without prejudice on the ground it was not shown at that time application has been made to the Court of Appeals, New York, for leave to appeal, and secondly, an extensive writing on September 11, 1964, reported in D.C., 233 F. Supp. 546, which seems mainly an effort on my part to impress upon the Courts of New York, its Attorney General and the District Attorneys throughout the state the profound changes from the past in regard to federal habeas corpus applications by state prisoners made by the rulings in Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837, and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770, March 18, 1963.

To add a little now, it is still recognized healthy federalism depends upon the avoidance of needless conflict between state and federal courts. (Elkins v. United States, 364 U.S. 206, 231, 80 S. Ct. 1437, 4 L.Ed.2d 1669). Equally so, however, it must be accepted—and I do so frankly after some years of hesitancy —that the remedy to lessen the ultimate federal-state conflict in these state criminal prosecutions is the adoption by the States of enlightened and liberalized hearing procedures and appellate review that satisfactorily meet the modern rulings and requirements of the noted Supreme Court rulings of recent years. Of course, the task may be burdensome, but if the States want to keep judicial control of their criminal business without undue and admittedly disturbing outside intervention, full conformity with the doctrines of the Supreme Court seems the only answer. A worthwhile case that further supports this feeling is Case v. State of Nebraska, 381 U.S. 336, at page 340, 85 S.Ct. 1486, 14 L.Ed.2d 422, where Supreme Court Justice Clark, who has been described at times as being on the conservative side in many of the new rulings, applauds the action of the State of Nebraska in providing comprehensive hearing and appellate post conviction procedures that will enable state prisoners to "air out" their federal claims in State courts, and will stop the rising conflict between federal and state courts. Justice Brennan, likewise concurring, (pgs. 346–347, 85 S.Ct. 1486), commented that the state post conviction procedure should be swift, simple and easily invoked; that it should be sufficiently comprehensive to embrace all federal constitutional claims, and in the light of Fay v. Noia, supra, it should eschew doctrines of forfeiture, waiver or default.

In my second decision in this proceeding, when it was quite evident state doors for review were closed, I issued a writ of habeas corpus for the production of the petitioner, appointed counsel and held a hearing at which the petitioner was the only witness. The minutes have been transcribed and shall be filed. As pointed out in my previous decisions, the claim by this petitioner that he was deprived of his right to a public trial without stated reason on the trial record, when convicted many years ago in Kings County Court after trial by jury of Robbery first degree, Grand Larceny first degree and Assault second degree, and sentenced on September 12, 1947 as a third felony offender by Judge Leibowitz to 30–60 years struck me after preliminary appraisal as one with sufficient merit and substance for further judicial canvass. It is not important to this decision, but petitioner was resentenced as a second felony offender in 1961 to the same 30–60 years. In fairness to New York it should be noted that when the judgment

of conviction was affirmed without opinion in 1948, this constitutional challenge now made of deprivation of a public trial was not raised in any form on the direct appeal. However, it was so directly presented in the coram nobis motion in 1963, and the State brief filed in opposition then relied upon the legal point alone that inasmuch as the order of exclusion of the public appeared upon the record of trial it can only be a subject for direct appeal, and the question is barred from coram nobis review. This may have been the position taken by the appellate courts of New York in their decisions, but I do not know, because nothing was written. However, if the federal constitutional claim has federal merit, unless intelligent waiver is present, it necessitates federal habeas corpus review under the rulings in Fay v. Noia and Townsend v. Sain, supra, when no other available state remedies are still open.

The evidentiary hearing held, as always, more fully developed a factual situation concerning the exclusion of the public that was not too complicated or disputed, as seemed clear in the original presentation to this Court. It was conceded by Assistant District Attorney Siegel of Kings County that the trial judge did clear the courtroom, and the bare reference in the trial record to the incident is the statement: "I think I will clear the courtroom. Have everybody step out except the people in the jury box."

At the hearing before me the petitioner had clear recollection. He testified Attorney Brodsky was retained counsel for him and two co-defendants on trial and that the attorney made no protest or remark to them when the Court made the announcement, or thereafter, as he put it. Bruno said his lawyer said nothing to him, and he said nothing to his lawyer because he did not know he was entitled to a public trial. It is his testimony the announcement came after the trial started, after evidence of two witnesses had been heard, and when the single identifying witness, apparently the major prosecution one, was on the witness stand. This witness, after the exclusion of those present in the public sections of the courtroom, came down from the witness stand, as is often done, and identified the three defendants as the robbers by placing his hand on each at the counsel table.

Bruno says the court attendants put everyone out, among them being his mother and brother. Bruno testified only the courtroom attendants stayed and the courtroom was closed to the public for the duration of the trial, which lasted only two days. He was without doubt there was no disturbance or outbreak of any kind before the exclusion statement by the judge. There is no mention of any reason by the judge for the direction made. Sisters, brothers, wives and friends of the defendants were among the thirty people he estimated in number ushered by the court attendants from the courtroom after the judicial direction. (R. 35–36). Under persistent questioning of Assistant District Attorney Siegel, he maintained everything was peaceful, nothing happened in the spectators' section, that from his position seated at the counsel table he saw no threatening gestures by any spectator that were assumed and suggested in the prosecutor's questions. (R. 48–52). At the hearing it was stipulated by the Assistant District Attorney there was no health or crowding situation involved that at times may warrant and justify the clearing of a courtroom. (R. 62).

Opposing affidavits leave a vacuum in the search for explanation and justification. The affidavits bear out the information given the Court that the affiants who were willing to come the long distance from Brooklyn to Albany if requested by me had no recollection of the incident long ago, as is understandable. The Court has discretion to admit and receive such affidavits as evidence in this type proceeding. (28 U.S.C.A. § 2246). Judge Leibowitz avers frankly: "I do not have a personal recollection of what occurred at the trial to motivate me in making my ruling and taking the action I took." Again: "I have no per-

sonal recollection of the trial and cannot say to this Court what it was which caused me to clear the courtroom." The affidavit does contain the reconstruction based upon the bad background of the defendants and their sentence as multiple offenders for the belief now "there occurred some major disorder in the courtroom, probably caused by some of the spectators who had an interest in one or more of the defendants by reason of criminal association."

Judge Helfand, who prosecuted the case and is now a Criminal Court Judge in New York City, by his affidavit says also: "I have no personal recollection of the incident, although I do remember trying the case." Again: "I do not have a personal recollection of any reason which would have caused Judge Leibowitz to take the action he did." Judge Helfand suggests he has the key to the problem in that the county courtrooms in Brooklyn each had two jury boxes, and that the direction: "Have everybody step out except the people in the jury box" must have referred to the jury box other than the one in which the jury was seated. It is his interpretation now, as I understand, that it was customary for lawyers and newspapermen to be seated in the other jury box, and it may be assumed some may have been present and remained. Judge Helfand also states the defendants were desperate criminals and because of that fact he believed something must have happened during the course of the trial which justified Judge Leibowitz' direction.

Defense counsel Brodsky in his affidavit says: "I have no personal recollection of the incident." Then, in regard to disorderly circumstances occurring during a trial, the attorney's affidavit is quite equivocal, stating: "I have no recollection that anything of this latter nature did happen. But I also have no recollection that this did not happen."

I accept these affidavits as good faith recollections, but feel their vagueness, lack of force and indecisiveness are apparent. It would be difficult to rely upon them as a fact-finding source directly or by proper inference, particularly in the light of the persuasive testimony of the petitioner in this respect and the odd fact there is no mention or indication of an untoward incident in any part of the trial record that routinely is made in some form prior to drastic clearance of the public from a courtroom during trial. A finding of justification in the legal sense for the closing of the trial to the public seems unsupportable on these inconclusive affidavits.

A strikingly similar situation is set forth in the writing of Chief Judge Lumbard for the Court of Appeals, Second Circuit, a short time ago in United States ex rel. Orlando v. Fay, 350 F.2d 967 9/23/65, affirming the denial of Judge Sugarman of federal habeas corpus. Coincidentally, there also was involved the closing of a courtroom by Judge Goldstein in Brooklyn in 1950, and the opinion sets forth from the trial record the varied incidents of harassment and disorder noted therein which gave good reason and ample support to justify, in the opinion of the federal appellate court, the exclusion of spectators from the courtroom. The differences there from the silent record here are apparent and point up the gravity of the question surrounding the claim of denial of public trial when there is a bare, unexplained judicial decree without more. In the Orlando case Judge Lumbard said inasmuch as there was no denial of public trial without legal reason there was no need to discuss the assertion that the Sixth Amendment right and guarantee to a public trial should apply directly to state trials, and whether Gaines v. State of Washington, 277 U.S. 81, 85, 48 S.Ct. 468, 72 L.Ed. 793, which held otherwise, should be reexamined in the light of recent Supreme Court decisions incorporating some of the Sixth Amendment rights into the Fourteenth Amendment.

■ It may be quite brash, but because of my conviction that this writ must be sustained I am compelled to enter the area ordinarily reserved for the federal appellate courts on the question deemed open as yet by Chief Judge Lum-

bard. It does not seem much of a step, because to me the signs are unmistakably clear from noted and recent United States Supreme Court writings that the Sixth Amendment right of an accused to a public trial must devolve upon the States by itself or at least by incorporation of it through the due process clause of the Fourteenth Amendment. I would think in this day this principle would be willingly accepted by all the States under our system of law and justice.

Here are some of the significant references:

In Re Oliver, 333 U.S. 257, 272, 68 S.Ct. 499, 92 L.Ed. 682, interprets Gaines v. State of Washington, 277 U.S. 81, 85–86, 48 S.Ct. 468, as one in which the Court assumed a criminal trial conducted in secret would violate the procedural requirements of the Fourteenth Amendment due process clause;

Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 6 L.Ed.2d 1081, declares the Court has not hesitated to enforce as strictly against the States as it does against the federal government the rights of free speech, free press and the right to notice and fair public trial;

In Gideon v. Wainwright, 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.Ed.2d 799, Justice Black generally stated that those guarantees of the Bill of Rights which are fundamental safeguards of liberty are equally protected against state invasion by the Due Process Clause of the Fourteenth Amendment;

Turner v. State of Louisiana, (1965), 379 U.S. 466, 472–473, 85 S.Ct. 546, 13 L.Ed.2d 424, phrases pertinently that in the constitutional sense trial by jury in a criminal case necessarily implies at the very least that the evidence developed against a defendant shall come from the witness stand in a public courtroom.

Of tremendous import on a question of this kind here is Pointer v. State of Texas, (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923, with direct caution that the older cases declaring the Sixth Amendment does not apply to the States can no longer be regarded as the law in the light of the Gideon, Mallory [Mallory v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653] and other cases cited in those opinions. Finally, Justice Harlan, concurring in Estes v. State of Texas, (1965), 381 U.S. 532, 588–589, 85 S.Ct. 1628, 14 L.Ed.2d 543, gave a homely description of what we mean and want by public trial:—

> "Thus the right of 'public trial' is not one belonging to the public, but one belonging to the accused, and inhering in the institutional process by which justice is administered. * * * A public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process."

In this instance the peremptory exclusion was clearly a deprivation of these elemental requisites under circumstances in my opinion still unexplained satisfactorily for justification. The exclusion occurred at a time when the result was an important identification witness was allowed to testify without the usual public scrutiny.

■ It is clear there was no objection to the exclusion of the public. However, the extent of prejudice is always problematical and well beyond the human grasp for certainty in that respect, particularly so at this late date. Actual prejudice need not be shown because violation of constitutional right implies prejudice. (United States v. Kobli, 3 Cir., 172 F.2d 919). In the mold set for waiver in Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837, I again state it will be seldom we shall find intelligent and intentional waiver and knowledgeable relinquishment of a federal right by any defendant in the ordinary client-attorney relationship at trial by jury. It is unreal to imagine weighty constitutional problems are then discussed by the lawyer and client. (See Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408; Levine v. United States, 362 U.S. 610, 626, 80 S.Ct. 1038, 4 L.Ed.2d 989, Brennan, J. dissenting; United States ex rel. Carafas v. LaVallee, 2 Cir.,

334 F.2d 331; Nelson v. People of State of California, 9 Cir., 346 F.2d 73). In any event, I have no difficulty, in view of the limited educational background of the petitioner at the time of the trial and his frank, convincing description that he had no idea what was going on or what his rights were, to find there was no waiver of the important right to public trial. I am conscious of the consequences of my decision, decidedly so because petitioner is an inmate in the Dannemora State Hospital used for confinement in New York of mentally disturbed prisoners. (See United States ex rel. Williams v. Fay, 2 Cir., 323 F.2d 65, 69, Ch. J. Lumbard concurring; cert. den. 376 U.S. 915, 84 S.Ct. 667, 11 L.Ed.2d 611). However, whatever the outcome in the future, the hearing record here shows alert and sensible answers by a person who, under my observation, conducted himself courteously and respectfully. This is not intended expert appraisal of his physical or mental condition. It was his testimony he is not under treatment and requested to stay in the hospital where he has been confined for twelve years, because he likes it better than the prison. (R. 66).

The federal constitutional right of the petitioner to a public trial, interpreted as binding upon the State of New York, was arbitrarily violated by state action. There is no alternative than to rule the writ of habeas corpus must be sustained, and the judgment of conviction challenged in the petition under which the petitioner is held is set aside as void. If appeal from the judgment and order herein is taken, the petitioner may be held in the custody of the Respondent-Director pending decision on the appeal. If appeal is not taken, the petitioner may be held in Kings County for retrial on the charges in the indictment filed against him. If such action is not promptly taken, the writ is hereby sustained fully and the petitioner is to be discharged from custody.

This is a final order and judgment, but if necessary for the transfer of petitioner from the custody of the Director to the lawful custodian in Kings County for defendants awaiting trial on indictment, a form of order or judgment in accordance herewith shall be submitted by the Attorney General of New York or the District Attorney of Kings County.

It is so ordered.