UNITED STATES of America ex rel. Anthony BRUNO, Petitioner,

v.

Ross E. HEROLD, M.D., Director of Dannemora State Hospital, Dannemora, New York, Respondent.

Civ. No. 10155.

United States District Court
N. D. New York.

March 23, 1966.

F. Redmond Griffin, Troy, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York, Albany, N. Y., for respondent, Aaron E. Koota, Dist. Atty., Kings Coun-

ty, Brooklyn, N. Y., Joel Lewittes, Asst. Atty. Gen., of counsel.

### JAMES T. FOLEY, Chief Judge.

This habeas corpus proceeding was entertained on the merits in September, 1964. Previous application had been denied without prejudice by decision dated May 7, 1964. Two reported decisions of mine thereafter are found in D.C., 233 F.Supp. 546 and 246 F.Supp. 363. By the last decision the writ of habeas corpus was sustained conditionally with the right granted to the Respondent to file a notice of appeal if so advised promptly. Upon application of the State a certificate of probable cause was issued on November 5, 1965, and a notice of appeal filed shortly thereafter.

Now, by formal motion that was returnable January 17, 1966, the Respondent, through Assistant Attorney General Joel Lewittes, moves pursuant to the Federal Rules of Civil Procedure 60(b)(6) to relieve the Respondent from the order of October 14, 1965. The staggering amount of time that has passed already in this preliminary processing for appealable decision to be reached gives reasonable basis for the fear expressed that delays of this kind at the District Court level or in the federal appellate courts will for all intents and purposes suspend the Great Writ. Brown v. Heinze, (N.D.California), 248 F.Supp. 293, 299).

I do not intend to review my reported decisions because they speak for themselves. It is sufficient to note that a serious question was presented in that the public unwarrantedly and without explanation on the record was excluded from the petitioner's trial in Brooklyn in 1947. The tone of my decisions should indicate my feeling that grave decision was involved and therefore extensive time was taken for hearing and to allow full investigation by New York to meet the challenge. Affidavits were filed by Judge Leibowitz, who presided at the trial in May 1947, the prosecutor, now

Judge Helfand, and Defense Attorney Brodsky. Understandably their recollection was vague, and my conclusion was such affidavits gave no worthwhile explanation for the drastic act of exclusion.

This new motion is supported by affidavits from the same three persons with important changes in recollection. The affidavit of Judge Leibowitz explains that he was not aware of my October 14, 1965 ruling until he saw it in the December 9, 1965 Federal Supplement advance sheet. He then had his law secretary review his personal files, newspaper clippings and materials, and a Daily News article dated May 28, 1947 was uncovered. It was this article that triggered full recollection and the knowledge that the petitioner and two co-defendants, one named Carlucci, were on trial on this same indictment before the late County Judge Louis Goldstein on May 22, 1947, when a mistrial was declared because the complainant out of fear refused to testify. This complaining witness, DiBari, after the mistrial was committed as a material witness. The trial was moved several days thereafter on May 26, 1947 before Judge Leibowitz. Of course, I accept the refreshing of recollection as offered in complete good faith, it being humanly understandable that one particular from the distant past may aid the recollection of much more. It is upon this recollection that Judge Leibowitz now recalls in his affidavit that before the second trial the Assistant District Attorney advised him of the mistrial, that DiBari feared for his life and that he would not testify. Judge Leibowitz avers now: "Accordingly, when Vincent DiBari took the stand, in my sound discretion I necessarily excluded the spectators. I can still see, this very day, the complete fright that enveloped the witness when he took the stand; he turned as white as a sheet and his lips quivered. I could see the leering eyes and menacing grimaces of some of the spectators." (Aff. pg. 5).

Judge Helfand's affidavit differs from his previous one in that he now recalls

he brought the facts of mistrial and complainant's fear to the attention of Judge Leibowitz and the Judge cleared the courtroom of spectators. In the original affidavit Judge Helfand stated usually lawyers and newspapermen were in the second jury box, apparently not cleared. The Judge now states there were a number of civilians in this second jury box, none of whom left the courtroom. Attorney Brodsky, who represented the three defendants, adds to his first affidavit that Judge Leibowitz was informed of the complainant's fear and attitude, and then Judge Leibowitz cleared the courtroom. The attorney adds also in the present affidavit supporting the motion that a number of civilians remained in the second jury box, usually reserved for attorneys and reporters. The attorney avers he offered no objection in the belief that an objection under the circumstances he was aware of would be neither "warranted nor sustainable".

In many of these habeas corpus applications the District Judges are compelled to be investigators as well as Judges in order to compile when necessary a satisfactory record for decision and appellate review. Often this is done informally without notice to District Attorneys or the Attorney General. However, in this situation copies of the order to show cause and the writ of habeas corpus for hearing were served on both. It is quite incomprehensible, with this formal federal intrusion, so much was left uncovered that now has been found for presentation after the passage of an inordinate amount of time. The Carlucci mistrial I knew about, because by decision dated September 10, 1963, I dismissed an application by Carlucci in regard to the mistrial claiming double jeopardy. Such mistrial had been consented to by Attorney Brodsky. Reconsideration of this Carlucci petition was denied by me on September 19, 1963, and the Court of Appeals, Second Circuit, by order dated November 18, 1964, denied a motion for a certificate of probable cause and assignment of counsel. One would think these court decisions should have been known and referred to in this proceeding of this petitioner if the Carlucci mistrial was considered of importance and materiality on the issue of the exclusion of the public at the trial several days later.

■ Serious technical argument could be made against the entertainment of this motion as not being encompassed by the provisions of Federal Rule 60(b) (6). This is a residual clause proper in exceptional circumstances only to relieve from the operation of a judgment and is limited by its own terms and interpretation. (7 Moore's Federal Practice, 2nd Ed., pg. 293 et seq.; United States v. Karahalias, 2 Cir., 205 F.2d 331, 333; Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266; Alison v. United States, 2 Cir., 251 F.2d 74). The ritualistic procedure is settled under the circumstances that inasmuch as a notice of appeal has been filed and the file and jurisdiction is now in the Court of Appeals, Second Circuit, application first must be made to me to indicate whether I would grant the motion before motion to the Circuit Court for remand is proper. (Ryan v. United States Lines Co., 2 Cir., 303 F.2d 430). However, in these habeas corpus proceedings I never shunt off important constitutional issues by enforcement of the technicalities of motion practice that might be enforced in other civil proceedings. I intend to entertain the motion on the merits as an application for reconsideration in order that the new material in this serious matter may be included in the appeal to the Court of Appeals for its consideration, if that Court thinks it proper.

■ The new information does not alter my judgment outlined in my writing in 246 F.Supp. 363. In my judgment, it would be dangerous doctrine if those were the only grounds to allow the barring of the public from a courtroom because the Judge and the District Attorney feel a complainant, an important and

probably here the sole identification witness, may be in such fear that he may not testify, or would testify untruthfully. This subjective test present in the human mind and unexpressed in any form in the trial record would hardly be a procedure or decision in accord with due process. Our strong desire to safeguard constitutional rights requires a reasonable record for ascertainment of possible violation. A mistrial in the case previously, no matter the circumstances, would not automatically permit an exclusion of the public on another day and place to insure a complaining witness may be more at ease and more willing to testify. Throughout history in our courts, state and federal, violent and dangerous criminals have been tried without the arbitrary exclusion of the public. Security measures of many kinds can be invoked, and unless there is disorder, disruption and threats on the scene it would not seem the reduction of fear in a complaining witness, as evidenced often, should prevail over the constitutional right of a defendant to a public trial.

The eminent reporter, John C. Daly, in a discussion on fair trials and free press, brought back the benefits of public trials that should not be lightly cast aside. (Am.Bar Assoc.Journal, Vol. 50, November 1964). First the reference was to Blackstone's viewpoint that open examination of witnesses in the presence of all mankind is much more conducive to the truth than the private or secret examination. Then, Jeremy Bentham writing to the effect that in most cases the publicity of the examination operates as a check upon mendacity and incorrectness. From my own experience I know the smaller the audience the more composed and articulate are the witnesses. It has recently been stated that unrestricted public scrutiny of judicial action is a meaningful assurance that an accused will be dealt with justly, and the presence of an audience has a wholesome effect on trustworthiness, since witnesses are less likely to testify falsely before a public gathering. (State v. Schmit, Minn.Sup.Ct. 139 N.W.2d 800, 1/21/66.

The new affidavits of Judge Helfand and Attorney Brodsky do not change the picture too much. We might have under their recollection as to persons being allowed to remain in the second jury box a semi-public trial which in my judgment does not meet the standards described by Judge Harlan for a public trial. (Estes v. State of Texas, 381 U.S. 532, 588–589, 85 S.Ct. 1628, 14 L.Ed.2d 543). Attorney Brodsky's version now that he knowingly did not object only emphasizes the lack of knowledge on the part of the petitioner that must be present to find knowing waiver on his part. Presuming waiver from a silent record is impermissible. (Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70). Previously I found nothing in the record to indicate the public was allowed to enter the courtroom after the complainant testified, and I find as before no reference to the trial record in this motion to support such assertion. The petitioner testified no one, including his family, was allowed to return to the spectators' seats after the exclusion. The affidavits of the prosecutor and defense counsel who were on the scene do not mention that the public came back after DiBari finished. Their affidavits do not state recollection yet of any disorder or unusual incident in the public seating section nor observation "of the leering eyes or menacing grimaces of some of the spectators". In my opinion, there are striking differences between the circumstances here and those shown clearly by the trial record in United States ex rel. Orlando v. Fay, 2 Cir., 350 F.2d 967. The record is still barren, in my opinion, of reasonable justification for total exclusion of the public.

I do not question that the petitioner and his co-defendants may have been hardened criminals with whom extraordinary measures might have to be taken for security during their trial. However, the late Chief Judge Clark of this Circuit put in one phrase our judi-

cial policy. The constitution is for the despicable as well as the admirable. (United States v. Miranti, 2 Cir., 253 F. 2d 135, 141).

The motion to relieve the respondent from the order of this Court, dated October 14, 1965, is denied and upon reconsideration my decision is reaffirmed. The Clerk of this Court shall forward the papers and decision on this motion to the Court of Appeals, Second Circuit, to be joined if the Circuit Court thinks proper with the pending appeal in this proceeding.