102 F.3d 71
 Joseph COSENTINO and Anthony Magana, Petitioners-Appellants,
v.
Walter R. KELLY, Superintendent, Attica Correctional
Facility, Daniel Sendowski, Superintendent,
Clinton Correctional Facility,
Respondents-Appellees,
 No. 689, Docket 96-2422.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 6, 1996.
Decided Dec. 16, 1996.
 
 John J. Sergi, Assistant District Attorney, White Plains, NY (Jeanine Pirro, District Attorney of Westchester County, Joseph M. Latino, Assistant District Attorney, of counsel), for Respondents-Appellees.
 Rochman, Platzer, Fallick & Sternheim, New York City (Barry M. Fallick, Bobbi C. Sternheim, of counsel), for Petitioners-Appellants.
 Before VAN GRAAFEILAND, JACOBS and CALABRESI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioners Anthony Magana and Joseph Cosentino appeal from a May 13, 1996 judgment of the United States District Court for the Southern District of New York, denying their petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Magana and Cosentino challenge their state court convictions because certain of their family members, who had disrupted petitioners' first trial and precipitated a mistrial, were excluded from petitioners' second trial, at which they were convicted. We agree with Judge Conner that the state proceedings did not violate the petitioners' Sixth Amendment right to a public trial.
 
 
 2
 Magana and Cosentino each were charged with the crimes of murder in the second degree (two counts), criminal possession of a weapon in the second degree (two counts), and criminal possession of a weapon in the third degree (three counts). Both indictments charged that petitioners aided, abetted, and acted in concert with one another to accomplish the murder of one John Petrucelli in White Plains, New York on September 13, 1989.
 
 
 3
 The first trial in this case commenced on October 10, 1990 in Westchester County Court. The jury completed deliberations on October 31, 1990, and informed the court that it had reached a verdict. The jury was brought back into the courtroom and was asked by the court whether it had reached a verdict with respect to the first count charging Magana with murder in the second degree. When the jury foreperson responded, "Guilty, your Honor," bedlam ensued. Family members and friends of the defendants began yelling, screaming, and crying aloud, and many had to be physically restrained and removed from the courtroom. The foreperson proceeded to announce guilty verdicts for the remaining counts, but the court was then forced to order a recess to end the continuing disruption.
 
 
 4
 After the jury later returned to the courtroom, the court apologized for the disturbance. When at last the jury was polled, two of the jurors had changed their verdicts, and a third juror was unsure as to her concurrence in the verdict. Another juror told the court: "The jury has fallen apart at this particular time, Judge, because of what happened in this courtroom just now and that--none of us, I think, can right now give anything a fair answer of any kind. I'm sorry."
 
 
 5
 After the jury was excused, both defense counsel moved for a mistrial. Before adjourning to consider the motion, the court recorded for the record what had transpired:
 
 
 6
 [A]t the time that the verdict was announced there were a great many members of the [petitioners'] family, friends here, I say 10 to 15 and not all of them but a good many of them just went absolutely off the wall yelling and screaming, several had to be physically restrained, taken out of the courtroom, we had quite a scene here.
 
 
 7
 As I indicated to the jury, one unlike any that I've ever seen or the attorneys have ever seen, as they indicated to me. And we had, I'd say, at least half a dozen or so court officers here and there were not enough for--we had to send the jury back into the jury room, we had to get the defendants out of the courtroom and we had to do what we could, the court officers had to do what they could to get the disruptive people off the floor and they eventually accomplished doing that. But the scene played out in front of the jury was a terrible one and their state of--I guess you'd have to say emotional distress at this point in time is certainly understandable to this court.
 
 
 8
 The following morning the defense attorneys renewed their mistrial motions, which the court denied. A curative instruction was then given and the jury retired to deliberate further. When they proved unable to reach a verdict after several more hours of deliberations and several readbacks, defense counsel renewed their motions for a mistrial, and their motions were granted.
 
 
 9
 On January 11, 1991, the court informed the parties at a scheduled conference that petitioners' wives and Cosentino's son would be barred from the courtroom during the second trial due to their involvement in the courtroom disruption at the first trial. Petitioners moved for an order prohibiting retrial on double jeopardy grounds; an order reversing the order barring the family members from the courtroom during the retrial; and for certain discovery. Petitioners' motions were denied.
 
 
 10
 After a second consolidated trial, each petitioner was convicted of murder in the second degree and criminal possession of a weapon in the third degree (two counts). On May 31, 1991, each petitioner was sentenced to concurrent terms of imprisonment of twenty-five years to life for the murder count, and two and one-third to seven years for the weapons counts.
 
 
 11
 On appeal to the Appellate Division, petitioners argued (inter alia ) that the trial court's closing of the proceedings to their families deprived them of their constitutional right to a public trial. The Appellate Division affirmed. People v. Magana, 198 A.D.2d 306, 603 N.Y.S.2d 772 (2d Dep't 1993); People v. Cosentino, 198 A.D.2d 294, 603 N.Y.S.2d 560 (2d Dep't 1993). Petitioners' motions for leave to appeal to the New York Court of Appeals were denied. People v. Cosentino, 83 N.Y.2d 909, 614 N.Y.S.2d 391, 637 N.E.2d 282 (1994); People v. Magana, 82 N.Y.2d 927, 610 N.Y.S.2d 179, 632 N.E.2d 489 (1994).
 
 
 12
 Petitioners filed the instant habeas petition in the district court on May 10, 1995 and the petition was denied on May 10, 1996.
 
 
 13
 The deciding principle of this appeal is stated in United States v. Fay, 350 F.2d 967 (2d Cir.1965) (Lumbard, C.J.), cert. denied, 384 U.S. 1008, 86 S.Ct. 1961, 16 L.Ed.2d 1021 (1966):
 
 
 14
 The Sixth Amendment provision that 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, ...' has always been interpreted as being subject to the trial judge's power to keep order in the courtroom. Were this not so a public trial might mean no trial at all at the option of the defendant and his sympathizers.
 
 
 15
 Id. at 971.
 
 
 16
 We do not deprecate the importance of the public trial as "a safeguard against any attempt to employ our courts as instruments of persecution." In re Oliver, 333 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948) (Black, J.). The accused is entitled to a public trial so that "the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." Id. at 271 n. 25, 68 S.Ct. at 506 n. 25 (quoting 1 Cooley, Constitutional Limitations 647 (8th ed. 1927)). At the same time, "[i]t is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) (Black, J.).
 
 
 17
 In this case, the trial judge was dealing with something more than a breach of decorum; a scene of pandemonium had directly caused a mistrial. The measure adopted by the trial judge--an order barring a handful of family members who had rioted at the first trial--struck a scrupulous "balance between the requirement that the actions of the courts be open to public scrutiny and the need to have the trial proceed in an orderly manner." Fay, 350 F.2d at 971. The order allowed access to most members of the public (and press) and many members of the defendants' families, and only barred those individuals who, in the court's judgment, posed a threat to the orderly conduct of the second trial. We therefore need not separately consider the factors enumerated in Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31 (1984), which governs the closing of the courtroom to peaceable individuals or to the public at large.
 
 
 18
 Accordingly, petitioners were not denied their right to a public trial and the judgment of the district court is affirmed.