14-1027-cr(L)
*United States v. Johnson, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of March, two thousand twenty.

Present:
>ROSEMARY S. POOLER,
>DEBRA ANN LIVINGSTON,
>RICHARD J. SULLIVAN,
>> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

   *Appellee*,

  v.

ASTON JOHNSON, AKA Richard Burke, AKA Daniel Arroyo, AKA Robert Brooks, RICHARD ANDERSON, AKA Jason Key, AKA Christopher Key, ANDREW WRIGHT, AKA Charles Rainey,

   *Defendants-Appellants*.[*]

14-1027-cr (Lead)
14-1120-cr (Con)
14-1716-cr (Con)

---

For Appellee:     MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY

---

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

1

For Defendant-Appellant Johnson:      VIVIAN SHEVITZ, South Salem, NY

For Defendant-Appellant Anderson:      JAY S. OVSIOVITCH, Assistant Federal Public Defender, Rochester, NY

For Defendant-Appellant Wright:      LAWRENCE D. GERZOG, New York, NY

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Aston Johnson, Richard Anderson, and Andrew Wright (together, the "Defendants") appeal from their judgments of conviction entered on April 1, March 27, and May 9, 2014, respectively, in the United States District Court for the Western District of New York (Siragusa, *J.*). Defendants, who were participants in a cross-country marijuana-distribution operation, were convicted under drug-conspiracy, firearm-possession, and murder statutes in connection with their murders of Robert Moncriffe, Mark Wisdom, and Christopher Green (together, the "Victims") in Greece, New York. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*      \*      \*

### I. Anderson's Cell-Site Location Information

At trial, the government offered historical cell-site location information ("CSLI") associated with Anderson's cell phone as evidence of his traveling from his home in Arizona to the murder scene in New York (with a stop in Columbus, Ohio, to obtain firearms and a rental car). The government obtained Anderson's CSLI pursuant to a warrant issued on April 8, 2010 by a Monroe County judge. In the district court, Anderson moved to suppress the CSLI associated with his cell phone, but the district court denied the motion on the basis that Anderson had

registered the phone with his service provider under the stolen identity—including the birth date and social security number—of Florida nursing-home resident named Jason Key. The district court concluded that Anderson therefore lacked a reasonable expectation of privacy in the CSLI associated with the phone. On appeal, Anderson argues that he had an objectively reasonable privacy interest in this CSLI despite having registered his phone in another's identity. We need not address the issue, however, because even assuming *arguendo* that Anderson had a reasonable expectation of privacy in the records at issue, investigators properly obtained them pursuant to a facially valid judicial warrant supported by probable cause, defeating Anderson's argument that the records should have been suppressed.

It is clear that law enforcement agents may properly obtain CSLI records, even assuming that an individual maintains a reasonable expectation of privacy in such records, when police act pursuant to a warrant issued on the basis of probable cause. *See Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). And in issuing such a search warrant, the court is tasked with "simply mak[ing] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that . . . evidence of a crime" will be reflected in the records at issue. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). On appeal, we accord "substantial deference to the finding of an issuing judicial officer that probable cause exists, limiting our inquiry to whether the officer had a substantial basis for his determination." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (internal quotation marks and citation omitted). The issuing court here had such a basis. The New York State Police investigator's application included a detailed factual recitation from which the issuing judge could conclude that Anderson was involved in the drug conspiracy surrounding the Victims' murders, that Anderson had traveled to the Rochester area by

3

the time of the murders, and that Anderson traveled together with the other suspects to a hotel immediately after the murders took place.

Even if the warrant had been defective, moreover, Anderson would not be entitled to a suppression order in the circumstances here. The exclusionary rule applies only to deter "deliberate, reckless, or grossly negligent conduct." *Herring v. United States*, 555 U.S. 135, 144 (2009). "When an officer genuinely believes that he has obtained a valid warrant . . . and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *United States v. Leon*, 468 U.S. 897, 920–21 (1984)). As long as the officer's reliance on the warrant was objectively reasonable, this "good faith" exception to the warrant requirement insulates the evidence from exclusion. *See Boles*, 914 F.3d at 103. Since there is no evidence to suggest that reliance on the warrant here was anything other than reasonable, the district court did not err in declining to exclude the CSLI evidence.[1]

**II. The District Court's Aiding-and-Abetting and *Pinkerton* Instructions**

Wright and Johnson next argue that the district court erred in instructing the jury that it could convict the Defendants not only as principal offenders under 21 U.S.C. § 848(e)(1)(A), but

---

[1] Indeed, because investigators obtained Anderson's CSLI in 2010, prior to the Supreme Court's decisions in *Carpenter* and *United States v. Jones*, 565 U.S. 400 (2012), this conclusion would hold even if investigators had *not* secured a warrant supported by probable cause before obtaining Anderson's CSLI records. *See United States v. Zodhiates*, 901 F.3d 137, 143–44 (2d Cir. 2018). In *Zodhiates*, we held that government agents who obtained a criminal defendant's CSLI records without a warrant before the Supreme Court decided *Carpenter* and *Jones* relied in good faith on then-applicable appellate precedent. *Id.* The government issued the subpoena at issue in *Zodhiates* pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703. For court orders like the warrant at issue in this case, the SCA required only a showing of "specific and articulable facts showing that there are reasonable grounds to believe that the . . . information sought[] [is] relevant and material to an ongoing criminal investigation." *Id.* § 2703(d). The warrant that issued here clearly met this standard.

4

also for aiding and abetting pursuant to 18 U.S.C. § 2 or as coconspirators as described in *Pinkerton v. United States*, 328 U.S. 640 (1946). We review a district court's jury instructions *de novo* and reverse where, in view of the charge as a whole, there was prejudicial error. *United States v. Sheehan*, 838 F.3d 109, 121 (2d Cir. 2016). There was no such error here.

In *United States v. Walker*, 142 F.3d 103, 113–14 (2d Cir. 1998), we held that both aiding-and-abetting and *Pinkerton* liability may attach to offenses under § 848(e). In that case, after concluding that the "district court was correct in instructing the jury that aiding and abetting liability was available," we upheld the conviction of a defendant who "aided in preparations for" a murder and "accompanied [another defendant] to [the murder victim's] house with the shared intent of carrying out the killing." *Id.* We also upheld a *Pinkerton* instruction in connection with a murder charged under § 848(e)(1)(A). *Id.* at 114. The district court did not err in instructing the jury that it could convict the Defendants under an aiding-and-abetting or *Pinkerton* theory of liability.

### III. The Sufficiency of the Evidence to Convict Wright

As he did in his unsuccessful Rule 29 motion before the district court, Wright argues that the government's evidence was insufficient to support the jury's guilty verdict under any of the instructed theories of liability, and that we should therefore vacate his conviction. Because the evidence was sufficient to support Wright's conviction, we agree with the district court that Wright is not entitled to vacatur. We review a district court's decision on a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 *de novo*. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015). In so doing, we view the evidence in the light most favorable to the Government with all reasonable inferences resolved in the Government's favor. *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014). We will uphold the jury's verdict "if any rational trier of fact could have

5

found the essential elements of the crime had been proved beyond a reasonable doubt." *Valle*, 807 F.3d at 515. We therefore "assum[e] that the jury resolved all questions of witness credibility . . . in favor of the prosecution," *United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010), and "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence," *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000) (internal quotation marks omitted). The verdict "may be based on circumstantial evidence," and "the Government is not required to preclude every reasonable hypothesis which is consistent with innocence." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) (internal quotation marks omitted).

Here, the evidence was plainly sufficient to find Wright guilty of the charged offenses. In addition to the effectively unchallenged evidence that Wright participated in a drug-distribution conspiracy with Johnson and Anderson, the government offered compelling evidence that Wright participated in the planning and execution of the murders. The government presented witness testimony and CSLI records showing that Wright booked a flight to Columbus, Ohio, rented a car, obtained two firearms, and drove to Rochester, New York, where he stayed in a Holiday Inn Express along with the other suspects. Ballistics evidence showed that one of the firearms Wright obtained in Columbus matched shell casings found at the murder scene. Video evidence also showed that on the day of the murders, Wright and Johnson left the Holiday Inn Express together and traveled to a Comfort Inn, where Johnson rented a room. Further video evidence showed that Wright and Anderson thereafter left the Holiday Inn Express together, traveling in the direction of the murder scene, and that Anderson, Wright, and Johnson all returned to the Comfort Inn approximately fifteen minutes after the 911 call alerting police to the murders. Wright and Anderson left about ten minutes later, and drove back to Columbus. The government also

6

presented evidence that approximately one week after the murders, Wright discussed a firearm he obtained in Columbus with the man who supplied it, indicating that the transaction had served its purpose and that Wright had disposed of the firearm. On this and other evidence in the trial record, the jury had more than a sufficient basis to convict Wright.

## IV. Anderson's Sixth Amendment Claim

Anderson argues that he is entitled to a new trial because court security officers twice removed his friend Kevin Felton from the courtroom during the trial proceedings, allegedly violating Anderson's Sixth Amendment right to a public trial. Under the circumstances here, we agree with the district court that Anderson is not entitled to a new trial.

The right to a public trial is "subject to the trial judge's power to keep order in the courtroom." *Cosentino v. Kelly*, 102 F.3d 71, 73 (2d Cir. 1996) (quoting *United States v. Fay*, 350 F.2d 967, 971 (2d Cir. 1965)). And even when improper exclusion does occur, not "every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned." *Gibbons v. Savage*, 555 F.3d 112, 120 (2d Cir. 2009). Under this "triviality" exception, an unjustified exclusion from the courtroom will not require a new trial if the closure does not "subvert[] the values the drafters of the Sixth Amendment sought to protect:" (1) ensuring a fair trial, (2) reminding the prosecutor and judge of their responsibility to the accused, (3) encouraging witnesses to come forward, and (4) discouraging perjury. *Smith v. Hollins*, 448 F.3d 533, 540 (2d Cir. 2006).

Felton's removal did not violate Anderson's right to a public trial or infringe on the values listed above. At no point during the alleged exclusion events did the district court close or partially close the courtroom either to the public or to the press. *See Cosentino*, 102 F.3d at 73 (affirming

7

an order that "allowed access to most members of the public (and press) . . . and only barred those individuals who . . . posed a threat to the orderly conduct of the second trial"). Instead, court security officers removed a single individual for suspicious behavior, including repeatedly attempting to communicate with a defendant and potentially attempting to intimidate the jury. Even if court security officers should not have removed Felton from the courtroom, his individual removal did not threaten the values the Sixth Amendment was fashioned to protect. The district court was therefore correct to deny Anderson's motion for a new trial. *Cf. Peterson v. Williams*, 85 F.3d 39, 43–44 (2d Cir. 1996) (finding no basis for a new trial even where an administrative error resulted in the complete closure of the courtroom during the defendant's testimony).

### V. Johnson's Ineffective Assistance of Counsel Claim

On appeal, Johnson argues that he was afforded constitutionally ineffective assistance of counsel because his attorney failed to make certain procedural motions to mitigate the effect of Wright's trial strategy of blaming his codefendants, failed to join in Anderson's motion to suppress CSLI evidence, and failed to join in motions concerning the alleged Sixth Amendment violations described above. On the record before us, we decline to resolve Johnson's claim of ineffective assistance of counsel, leaving him with the opportunity to raise it again—along with any other collateral attacks on his conviction—in a motion pursuant to 28 U.S.C. § 2255. *See United States v. Doe*, 365 F.3d 150, 152 (2d Cir. 2004).

Our Circuit has a "baseline aversion to resolving ineffectiveness claims on direct review," *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) (internal quotation marks omitted), a position consistent with the Supreme Court's observation that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," *Massaro v. United States*, 538 U.S. 500, 504 (2003). "Among the reasons for this preference is that the

8

allegedly ineffective attorney should generally be given the opportunity to explain the conduct at issue." *United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (citation omitted). In light of the incomplete record before us, and because "the district court [is] the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial," we decline to address Johnson's ineffective-assistance claims at this time. *Massaro*, 538 U.S. at 505.

We have considered Defendants' remaining arguments and find any error to be harmless or the claims to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk